Charles Stewart Mott v. Commissioner.
Mott v. Commissioner
Docket No. 108611.
United States Tax Court
1943 Tax Ct. Memo LEXIS 522; 1 T.C.M. (CCH) 356; T.C.M. (RIA) 43011; January 6, 1943
*522 E. F. Colladay, Esq., 1331 G St., N.W., Washington, D.C., Wilton H. Wallace, Esq., 1331 G St., N.W., Washington, D.C., and Roy E. Brownell, Esq., 1427 Union Industrial Bldg., Flint, Mich., for the petitioner. Thomas H. Lewis, Jr., Esq., for the respondent. STERNHAGEN Memorandum Findings of Fact and Opinion The Commissioner determined a gift tax deficiency of $150,712.50 for 1939. The petitioner assails the valuation of the gift. Findings of Fact Petitioner, an individual, filed his return in the District of Michigan. On December 5, 1939, he transferred by way of gift in trust for his wife and two children, 100,000 shares of common stock of General Motors Corporation, a Delaware corporation. On that day, on the New York Stock Exchange, 7,900 such shares were bought and sold and the mean price was $52.75 per share, the high being 52 7/8 and the low 52 5/8. On December 5, 1939, the fair market value of 100,000 shares of common stock of the General Motors Corporation was $5,275,000. Opinion STERNHAGEN, Judge: On his return, the petitioner stated the value of the gift at $4,925,000, or $49.25 a share, for the 100,000 shares transferred. The Commissioner determined the value at $5,275,000, *523 or $52.75 a share, "being the average of the high and low price at which said stock sold on the New York Stock Exchange on the basic date." The high was 52 7/8 and the low, 52 5/8. We have found as a fact, based upon the evidence, that the value was $52.75 per share, as the Commissioner has determined. The petitioner's valuation of 49 1/4 is based upon the opinion estimates of persons with experience in the security business.It is said that on the day in question a block of this size could not have been offered on the stock exchange without breaking the market, and that the practical and approved method of disposing of such a block was by "secondary distribution". This method was described, and opinions were given as to the price which an owner of such a block could reasonably expect to get from dealers. The estimates varied between 47 and 50. There is no evidence that any sales were actually made in that range, or that any other determinative facts actually occurred. The dealer would then try to distribute the shares to the public at a higher price. The argument is that the fair market value to be used for gift tax purposes is this rationalized "wholesale" price which it is thought *524 the dealers would pay the petitioner. We are not convinced that this is the proper method of determining such value, or that the value has been proven at a lower figure than that used by the Commissioner. The unit stock exchange price of shares does not necessarily determine the aggregate value of a large block. Such block value may be smaller than a multiple of the unit price or it may be larger, , or it may be the same, ; . "Blockage" is not an inevitable factor of value. Petitioner says: The practice of disposing of large blocks of securities by the wholesale method has become so well recognized throughout the business and financial world that we feel the courts should now recognize this practice as the one to determine the fair market value of large blocks of securities. We are compelled to reject this proposition. The method of sale, exchange or disposition by which gain or loss may be realized is not necessarily a *525 controlling factor of value. It would be convenient if such a positive rule could be adopted as a means of simplifying the valuation problem in its multifarious forms. But under the law in its present state the only proposition that is established is the negative proposition that there is no rule. Congress has not yet enacted any means of escape from the determination of actual value in each specific case, and we are not at liberty to say that wholesale price and not retail prices are controlling factors. The facts relating to the very property under consideration must continue to control the valuation. In this proceeding, the evidence in respect of General Motors common shares does not indicate that on December 5, 1939, the fair market value was, in fact, less than 52 3/4 per share, or $5,275,000 for 100,000 shares, as the Commissioner has determined. Except by the opinion testimony, it is not shown that the shares, if bought and sold on that day, would not have brought that price. The trend of the market was not downward, and as many shares as this had changed hands before on one day on the Exchange. On September 5, 1939, 109,100 shares were sold at prices ranging from 48 to 51 *526 7/8, and the market thereafter continued to rise to a high of 56 1/8 on October 26, when 46,100 shares were sold. After that, in 1939, the market varied generally around 54, and the figure of 52 3/4 which was the average of December 5, and which the Commissioner used, was the lowest daily average for the remainder of 1939. During the rest of the year, it rose again to 53 and 54. The evidence does not support an inference that these prices were artificial or not indicative of a fair market value. The Commissioner's determination of value is sustained. The decision, it need hardly be stated, has been reached only upon a full consideration of the evidence in the record, including the opinions of petitioner's witnesses. Those opinions, like all the other relevant evidence, are not disregarded but are given full respect. They are, however, not binding upon this Court as to their ultimate conclusions. As between the official determination of the Commissioner as to the fact of value on the date in question and the opinions of petitioner's witnesses, we are unable to say that the opinions are sufficiently compelling to establish the lower value as the fact. Decision will be entered for *527 the respondent.